Elmer A. Towle v. Commissioner. Mary Towle v. Commissioner.
Towle v. Commissioner
Docket Nos. 48122, 48123.
United States Tax Court
T.C. Memo 1955-141; 1955 Tax Ct. Memo LEXIS 198; 14 T.C.M. (CCH) 521; T.C.M. (RIA) 55141; May 31, 1955
*198 Joseph Hartman, Esq., Clark Building, Jacksonville, Fla., and Louis Safer, Esq., for the petitioners. A. F. Barone, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioners' income taxes and penalties as follows: Understatement
Delin-
and Failure to
quency
File Estimate
Fraud
Year
Tax
Deficiency
Penalty
Penalties
Penalty
1946
Income
$ 278.00
$ 69.50
$ 44.48
$ 139.00
1947
Income
344.00
86.00
55.04
172.00
1948
Income
233.00
58.25
37.30
116.50
1949
Income
679.48
169.87
108.73
339.74
1950
Income
1,042.30
260.58
166.78
521.15
Total
$2,576.78
$644.20
$412.33
$1,288.39 The parties have stipulated that petitioner Mary Towle is not liable for any part of the deficiencies herein, and that the income tax of petitioner Elmer A. Towle, if any, shall be computed under Rule 50 on the basis of a separate rather than a joint return. The questions to be decided are whether, and in what amounts, petitioner Elmer A. Towle received taxable income for the years in controversy; and, if such amounts were received, *199 whether petitioner Elmer A. Towle is liable for the various penalties determined by respondent as a result of the failure to file income tax returns and estimates of income tax for the years in controversy. Findings of Fact Some of the facts have been stipulated and are found accordingly. Elmer A. Towle, hereinafter called petitioner, resided with his wife, Mary, at 1510 Washington Street, Eustis, Florida, during the years in controversy and was over 35 years of age throughout that period. Petitioner did not file any Federal income tax returns or declarations of estimated tax for those years. During the years in controversy, petitioner and his wife maintained a joint bank account at the Barnett National Bank, Jacksonville, Florida, hereinafter called the Barnett account. The balances, deposits, and withdrawals in connection with the Barnett account for the years ended December 31, 1946 through December 31, 1950 were as follows: 1946
1947
1948
1949
1950
Beginning balance
$ 43.81
$ 27.76
$ 265.58
$1,026.46
$ 902.38
Deposits
793.80
1,176.03
2,245.00
6,973.45
8,283.15
Withdrawals
809.65
938.21
1,484.12
7,097.53
8,533.81
During *200 the year ended December 31, 1949 petitioner deposited nonincome funds in the Barnett account as follows: Inheritance from Nellie Porter
$1,000.00
Loans from Miss Dora Towle
910.00
Check exchanged with H. C. Reed on
May 2, 1949
400.00
During the year ended December 31, 1949, petitioner expended cash in the amount of $1,841.50 toward the purchase of a 1949 Ford automobile. During the years ended December 31, 1946 through December 31, 1950, petitioner expended cash as rent for his apartment as follows: Year
Amount
1946
$450.00
1947
450.00
1948
487.50
1949
495.00
1950
550.00
Respondent determined petitioner's taxable income for the years in controversy from his bank deposits and expenditures as follows: 1946
1947
1948
1949
1950
Total deposits Barnett National Bank Jackson-
ville, Fla.
$ 793.60
$1,176.03
$2,245.00
$6,973.45
$8,283.15
Less nonincome funds deposited: Inheritance from Nellie Porter
None
None
None
1,000.00
None
Loans from Miss Dora Towie
None
None
None
910.00
None
Check exchanged with H. C. Reed on 5-2-49
400.00
Total net deposits
$ 793.60
$1,176.03
$2,245.00
$4,663.45
$8,283.15
Expenditures of undeposited funds: 1949 Ford automobile
1,841.50
Rent on apartment
450.00
450.00
487.50
495.00
550.00
Expenditures
1,500.00
1,500.00
1,500.00
200.00
200.00
Adjusted gross income
$2,743.60
$3,126.03
$4,232.50
$7,199.95
$9,033.15
*201 Petitioner did not maintain any books, accounts or records of income or disbursements during the years in controversy. Prior to 1922, petitioner was engaged in the business of buying, selling, and trading horses. A large amount of his trading was done on a basis of an initial cash payment with the unpaid balance evidenced by notes payable in installments. Petitioner also acquired jewelry by trading with buyers and by outright purchases. In 1922, a serious accident crippled him. During the 1920's petitioner moved to Florida. He earned income thereafter from time to time. His personal living expenses totaled approximately $1,500 annually. During the years ended December 31, 1946 through December 31, 1950 and prior thereto, petitioner was actively engaged in the business of buying, selling, trading, and appraising diamonds and jewelry. Petitioner is an experienced jewelry dealer and appraiser. Between 1946 and 1950, petitioner made purchases of diamonds from Nathan Tannenbaum, a diamond cutter in New York. In 1950, his purchases from Tannenbaum totaled not less than $5,682.50. Petitioner made purchases from National Jewelry Company in 1946, 1947 and 1948. Petitioner sold *202 numerous items of jewelry between 1945 and 1950. These items included rings, bracelets, watches, and cuff links. The following is a partial list of petitioner's customers and the amounts of their purchases during the years in controversy: Customers
Amounts
Mr. Bolts $200
Dr. Lester L. Wilson
200
W. J. Lucas
675
85
Joseph S. Carruthers $400
Mrs. Eleanor Dodson
200
Joseph W. Brown
700
L. Lockmiller
425
J. Moses
200
Petitioner was attacked and robbed of sums of money, and personal property at three different times during the years 1946 through 1950. Petitioner stated his net worth as of December 31, 1945 to be as follows: December 31, 1945
ASSETS
Cash
Barnett National Bank
$ 43.81
On hand est.
$10,000.00 or 15,000.00
Lot in DeSoto County - about
2,500.00
Cost of jewelry on hand - about
1,000.00
A diamond ring that cost me about
$8,500.00 was stolen about 6 or 7
years ago
Note receivable
410.00
Total
$18,953.81
LIABILITIES
None
Petitioner stated his net worth as of December 31, 1950 to be as follows December 31, 1950
ASSETS
Cash
Barnett National Bank
$ 651.72
On hand
$10,000 or 15,000.00
Cost of jewelry on hand est.
1,000.00
Note receivable
410.00
Total
$17,061.72
LIABILITIES
None
*203 During the years ended December 31, 1946 through December 31, 1950, petitioner gave his wife $20 a week for groceries. During this same period, his wife withdrew amounts from the Barnett account as follows: 1946
$ 531.32
1947
486.81
1948
418.13
1949
884.31
1950
1,662.30
For the tax years ended December 31, 1946 through December 31, 1950, petitioner had unreported taxable income as follows: 1946
$2,743.60
1947
3,126.03
1948
4,232.50
1949
7,199.95
1950
9,033.15
Some part of the deficiencies for each of the years in controversy was due to fraud with intent to evade tax. Petitioner's failure to file income tax returns for the taxable years ended December 31, 1946 through December 31, 1950 was due to willful neglect. Petitioner failed to file declarations of estimated tax for the years ended December 31, 1946 through December 31, 1950 due to willful neglect. Opinion Since petitioner's entire defense ultimately rests on his own uncorroborated testimony to which we are unable to give credence, no alternative exists but to find the facts in accordance with respondent's determination. This has been done and disposes of the primary *204 issue. ; . A similar conclusion is of course required as to those penalties where the burden of proof rests upon petitioner. No adequate reason was advanced or even attempted which would justify a finding of reasonable cause. As to the fraud penalty, in connection with which the burden of proof falls on respondent, petitioner admits numerous purchases and sales during the years in controversy. Other witnesses testified to their purchases from petitioner. Even without regard to many transactions of which petitioner disclaims recollection, the evidence amply warrants our conclusion that he was engaged in the business of selling jewelry during those years. And in view of petitioner's failure to keep any books of account in connection with his activities, respondent properly resorted to bank records of unexplained deposits which, with evidence of nondeductible expenditures, form the basis for his determination of unreported income during these years. Such unexplained deposits constitute substantial evidence of fraud. , certiorari denied *205 . See , affd. (C.A. 3) ; , certiorari denied ; , affd. (C.A. 3) . Consequently, enough has been shown to shift the burden of going forward in rebuttal of respondent's prima facie case to the petitioner. This petitioner has failed to do. His testimony that all of his sales resulted in losses; or were not entered into for profit; or consisted of inventory that had been in his possession for many years prior to the years in controversy; or were merely gratuitous agency transactions whereby he used money advanced by an individual named Duval in order to make purchases on the latter's behalf must be ultimately rejected for lack of corroboration. Duval was never produced at the hearing. That a man called "Banana" and Duval were the same person, for whatever that might have contributed to petitioner's case, also depends solely upon the latter's testimony. Since we are unable to accept the reliability of that testimony in support *206 of any of his contentions, petitioner must be held to have failed to rebut respondent's prima facie proof of fraud. As to that issue, respondent's determination is also sustained. Joseph Calafato, Pincus Brecher, Russell C. Mauch, Gleckman v. United States, all supra. Decisions will be entered under Rule 50.